IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOYCE KEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 15-cv-1178 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| MERCK SHARP & DOHME CORP., | ) | |
| a foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on plaintiff Joyce Keen's motion to vacate the summary judgment ruling in favor of defendant Merck Sharp & Dohme Corporation's ("Merck") and hold Merck and Respondents Wheels, Inc. ("Wheels") and Michael Wells in contempt of Court. Respondents brought their own motions for proof of service and attorney's fees. This Court has reviewed the parties' extensive submissions, including pre-hearing briefs, and held a two day hearing on January 16–17, 2019.

For the reasons stated herein, this Court denies Keen's Motion to Vacate Summary Judgment [187] and Motion for Rule to Show Cause [189]. The Court dismisses Respondents' Motion to Compel Plaintiff to Produce Proof of Service of the Subpoena [197] as moot and denies Respondents' Motion for Attorney's Fees [233].

**Background**

Plaintiff, Joyce Keen, filed a seven count First Amended Complaint, alleging disability discrimination and failure to accommodate, gender discrimination, and retaliation. The Court granted Merck's motion for summary judgment on all counts on March 5, 2018. (Dkt. 174.) The

1

Court assumes familiarity with the factual record detailed in its summary judgment order. Keen filed her appeal of the Court's order on March 26, 2018. (Dkt. 179.)

Keen contacted Merck Human Resources Business Partner Kristen Frank in May 2018 regarding questions concerning income related to personal use of her company vehicle reflected on her W2 tax form. James Jin (another Merck employee) contacted Wheels, and Wheels provided Jin with reported mileage and excerpts of Wheels' call logs that listed phone calls that Keen made to Wheels. Wheels is the fleet management company that handled certain aspects of Merck's company vehicle program. On June 6, 2018, Frank responded to Keen and included portions of the call log that Wheels maintained. (Dkt. 189-1, Ex. C.) Among those call log excerpts were entries regarding Keen's questions concerning her company vehicle serviced by Wheels. Frank testified that she did not have those excerpts of the call log entries prior to Keen's questions and that she did not have direct access to the Wheels' information regarding employee cars, including any call logs, or other Wheels records. Further, Frank was unaware of any Merck employees who have direct access into Wheel's call log records.

On September 17, 2018, Keen filed her motion to vacate summary judgment and motion to hold Merck, Wheels, and Wells in contempt of court. Respondents filed their motion for Keen to produce proof of service of the subpoena and a motion for attorney's fees on October 2, 2018 and January 7, 2019, respectively. In December 2018, Wheels produced documents in response to the subpoena riders directed to Michael Wells, Kim Baskerville, and Fabiola Gonzalez in conjunction with the January evidentiary hearing. The production included emails between Keen and Wheels employees and internal emails between Wheels employees. Pending an evidentiary hearing on Keen's motions, the Seventh Circuit retained jurisdiction over the appeal and suspended briefing until this Court ruled on the motion for relief from judgment. (Dkt. 199.)

At the hearing, several of Wheels' employees testified regarding the interaction of Wheels' and Merck's systems. Erika Smith, formerly a Driver Services Associate employed by Wheels, worked in the Wheels' call center and took calls directly from drivers, including from Keen. She testified that when she received a medical exception request, she would consult the Merck profile to view its decision. Wheels would apply the instructions provided by Merck because Wheels had no authority regarding whether to grant medical exception requests. (*See also* Wheels Ex. 77.) Smith explained that her notes regarding her calls with Keen reflected what Keen said to her, and do not reflect any sort of recommendation or suggestion from Smith. Further, Smith testified that she was not trained to make medical exception decisions, and she was not aware of any individuals at Wheels who were qualified to make those kinds of assessments.

Wheels Account Executive Kim Baskerville testified that she served as the liaison between driver services at Wheels and Merck, which meant that she sometimes would receive requests for specific vehicles from drivers. She monitored a Wheels email account (Merck.admin@wheels.com) that was dedicated to Merck vehicle requests. Baskerville explained that although she had some communications with Keen, she does not have input into medical exception decisions and does not have access to Merck's systems. Rather, all medical exception vehicle requests are directly handled by Merck. Baskerville testified that no one at Wheels had any role in deciding whether to grant a medical exception vehicle and that no one ever asked her input on whether an exception should be granted for Keen.

Wheels Driver Care Operations Associate Fabiola Gonzalez testified that her name is listed on the requests received from Keen because Gonzalez would distribute requests received in the call center to the appropriate Wheels account executive. (Pl. Ex. 21.) Gonzalez also had no decision making authority regarding the final response to a request, which includes medical exception vehicle decisions, recommendations, or suggestions.

3

The parties also presented testimony regarding the documents produced in the litigation. First, Michael Wells, who has held the role of Risk Management Coordinator at Wheels for approximately five years, testified regarding Keen's subpoenas to Wheels. Although Wells did not recall the specifics about how he received it from Keen, he received a subpoena in late November or December 2016, which requested documents and data regarding Keen and her request for a vehicle. (Pl. Ex. 7.) Wells testified that he called Keen's attorney to figure out what kind of documents he was looking for. Then Wells sent Keen's attorney the vehicle's title and service history and asked Keen's attorney to let him know if he needed anything else. Keen's attorney never responded except to request unredacted versions of the records, which Wells provided. Wells testified that he did not withhold any records that Keen's counsel specifically asked him to produce and that he did not conceal any records from Keen. Further, Wells testified that he received an email that included an offer to assist with responding to the subpoena from Merck's counsel, but he did not communicate with Merck's counsel and no one from Merck's counsel's law firm or within the Wheels' organization asked him to withhold or conceal any records.

Keen's supervisor at Merck, David Hass, testified regarding the documents that he turned over for production in the litigation. Specifically, Hass stated that he provided thousands of emails to Merck's counsel when requested earlier in litigation and that he did not have anything additional to provide counsel in response to the hearing subpoena. (Dkt. 210-3.) Another Merck manager, Robert Church, also submit an affidavit stating that he provided all relevant emails earlier in the litigation, as requested. (Dkt. 210-4.) Hass further testified that he was not involved in the decision to deny Keen's medical exception vehicle request. Rather, Merck's Health Services Department makes decisions regarding these vehicle requests.

Finally, Keen testified regarding a number of exhibits that she stated Wheels did not produce until 2018 after Keen subpoenaed the documents a second time. Keen recognized that her email

was included on at least some of the emails that she testified were not produced by Merck or Wheels during the case. Other emails had Bates stamps from Merck and Keen, indicating that they were previously produced in the litigation.

## I.     Motion to Show Cause

**Legal Standard**

The Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). A party objecting to a subpoena must raise its "objection before 'the earlier of the time specified for compliance or 14 days after the subpoena is served.'" *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (quoting Fed. R. Civ. P. 45(c)(2)(B)). If a party does not object in writing prior to the production of documents responsive to the subpoena, Rule 45(g) "does not require the court to first order compliance before imposing the sanction of contempt." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 690 (7th Cir. 2010).

To prevail on its request for a contempt finding, Keen must establish by clear and convincing evidence that: (1) a Court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *Hyatt*, 621 F.3d at 692. If the Court finds civil contempt, the Court may compensate the plaintiff for losses incurred as a result. *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351 (7th Cir. 2018).

**Discussion**

Keen contends that Merck and Wheels should be held in contempt of court because they knowingly concealed relevant and material records. Specifically, Keen asserts that the call log should have been produced in response to its Request for Production No. 21 to Merck and to its subpoena

to Wheels that sought "any records regarding Joyce E. Keen since June 1, 2015." (Dkt. 187-1, Ex. A.) Keen argues that Merck interfered with the production of records responsive to Keen's subpoena and that Wheels willfully concealed the call log and hundreds of other documents responsive to the 2016 subpoena from Keen. As a result, Keen seeks civil sanctions, including: (1) a finding that Merck, Wheels, and Wells were in contempt for not complying with Keen's subpoena; (2) an order requiring Merck and Wheels to produce all correspondence, ESI, and emails responsive to Keen's November 28, 2016 subpoena; and (3) a fine of one million dollars against Merck and Wheels.

Merck responds that it cannot be held in contempt because there is no evidence that it failed to comply with a Court order or respond to a subpoena. Merck objected to Keen's broad discovery requests and narrowed its response to enumerated categories of documents. Merck stated that it did not produce the call log because it is an internal Wheels record not in Merck's possession, custody, and control. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite."). Keen never notified Merck that she believed that Merck's discovery requests were deficient, sought a meet-and-confer, or filed a motion to compel.

Wheels contends that because Keen did not file a proof of service of the subpoena the subpoena was not properly served, which precludes a contempt finding under Rule 45(g). *See Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 13 (N.D. Ill. 1986) (Hart, J.) ("The invalidity of the court order allegedly violated is always a defense to civil contempt."); *In re Rosen*, 542 B.R. 177, 179 (Bankr. E.D. Pa. 2015). Nonetheless, Wheels argues that they complied with the subpoena as modified by Keen's attorney. Further, Wheels argues that Keen waived any right to pursue documents beyond what Wheels produced because Keen's counsel failed to respond to Wells' inquiry as to whether

6

Keen sought any further materials. Keen's counsel responds that the subpoena was personally served on Wheels on November 29, 2016. (Pl. Ex. 7.) Keen's counsel argued that because Wheels did not object to the subpoena within 14 days, it waived any objections based on service. *See Ott*, 682 F.3d at 558.

First, the Court finds that Keen has not presented evidence that supports holding Merck in civil contempt. Merck responded to Keen's written discovery requests, in which it limited its response to those documents within its possession, custody, or control, and produced that body of documents. Keen did not raise any concerns with Merck's objections either with Merck or with the Court. The hearing testimony and affidavits from Hass and Church support that the available documents were collected and provided to Merck's counsel. Additionally, the testimony from Wells confirms that he did not take any steps to conceal records at the direction of Merck or its counsel.

Turning its focus to Wheels, the Court finds the proof of service of the subpoena issue problematic on both sides. The Court is without conclusive evidence regarding proper service of the subpoena, but it appears likely that Keen's counsel failed to issue it properly. Keen's exhibits in support of service include dozens of irrelevant documents and emails, but do not contain an affidavit or dated certificate of service. (Pl. Exs. 7 & 73.) However, Wheels did not object to the subpoena and undertook a series of actions indicating that it understood that some response was required. Thus, Wheels waived any objections to the subpoena when it failed to object within the required time limits or when Wheels provided the few documents that they did provide to Keen. *See Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397 (N.D. Ill. 2002) (Scheniker, M.J.). As such, Respondents' motion for proof of service is denied as moot. The actions Wheels did take do not amount to the substantial production of responsive documents, as demonstrated by the volume of documents reviewed during the hearing that Wheels produced in response to the hearing subpoenas. For his part, Keen's counsel failed to follow up on the subpoena to Wheels in any form,

7

such as requesting specific documents that Keen knew existed, confirming that Wheels had provided all responsive documents, or filing a motion to compel with the Court. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (finding that a party was not diligent during discovery when she knew of allegedly deficient discovery responses before the close of discovery but waited until after the close of discovery to file a motion to compel).

The Court strongly admonishes Wheels for failing initially to produce the documents now at issue. However, the Court does not find civil contempt appropriate under these circumstances. Although Wheels failed to provide all relevant documents within the proper time frame, the necessary documents have been provided to Keen. As explored further below, these documents did not inhibit or prejudice Keen's ability to litigate her case, so no damages are appropriate. As such, the Court finds that an order of civil contempt or any associated fine is not warranted. Keen's motion for contempt is denied.

## II.      Motion to Vacate Summary Judgment

**Legal Standard**

Rule 60(b)(3) provides that the court may grant a party relief from the judgment where there was "fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010) (citing Fed. R. Civ. P. 60(b)(3)). To obtain relief, the moving party must show that the misconduct occurred and that the misconduct prevented her from "fully and fairly presenting [her] case." *Venson v. Altamirano*, 749 F.3d 641, 653 (7th Cir. 2014). Fraud is only actionable if it is evidenced by clear and convincing evidence and prejudices the adverse party. *Wickens*, 620 F.3d at 759. It is well-established that relief pursuant to Rule 60(b) "is an extraordinary remedy" that "is granted only in exceptional circumstances." *Id.*; *see also Willis v. Lepine*, 687 F.3d 826, 833 (7th Cir. 2012). In certain circumstances, misconduct during discovery may justify vacating judgment pursuant to Rule 60(b)(3). *See* Wright & Miller, Fed. Prac. & Proc. § 2860 (3d ed., 2015).

**Discussion**

Keen contends that the call log and dozens of other documents discovered after the summary judgment order were relevant to her claims that Merck retaliated against her and failed to accommodate her disability. Merck counters that the call log did not substantially interfere with Keen's ability to fully and fairly present her case because it is immaterial to her claim that Merck failed to grant her request for a Chevy Tahoe as a reasonable accommodation. Moreover, Merck notes that Keen had made the calls to the Wheels' employees that were reflected in the call log. If Keen intended to rely upon those calls to support her claims, she could have disclosed Wheels' employee Erika Smith as a witness and subpoenaed her deposition, or, at a minimum, Keen could have pursued further additional discovery from Wheels. Similarly, Wheels argues that the emails and call log are immaterial to Keen's claims. Wheels also contends that Keen was knowledgeable regarding the calls that she made to Wheels and failed to diligently pursue discovery on this issue.

Three witnesses (Smith, Baskerville, and Gonzalez) testified that Wheels has no authority or involvement in decisions regarding whether to grant medical exception requests. Smith and Baskerville also testified that no Wheels employee had any authority or qualification to decide, demand, recommend, or suggest any medical-exception vehicle. Further, Keen's manager Hass testified that he had no involvement with Keen's request and that Merck's Health Services Department made the denial determination. Likewise, Baskerville credibly testified that she does not have access to Merck's systems while Frank testified that Merck employees do not have access to Wheels' documents.

During the hearing, Keen sought to introduce evidence that went to the merits of the Court's summary judgment ruling and that previously could have been presented to the Court. Keen also testified regarding a series of documents that she stated were not previously produced and interfered with her ability to present her case. However, a portion of the documents Keen identified

had been produced by Merck or Keen during discovery, meaning that they were options for Keen to rely upon in opposing Merck's motion for summary judgment. (*See, e.g.*, Pl. Exs. 42, 44, 49, 56.) Keen cannot use a Rule 60(b)(3) motion as a vehicle to direct the Court to evidence that she opted not to highlight before. It is not a second bite at the apple.

The key question for the Court is whether the documents produced after the summary judgment order was entered would have opened up different avenues of discovery or arguments at summary judgment that could have changed Keen's ability to fully and fairly present her case. The evidence demonstrates that is not the case. Keen points to a number of documents later produced by Wheels; however, volume alone does not equate to a different outcome for Keen. The hearing testimony clearly establishes that Wheels employees did not have decision making power when it came to medical exception vehicle requests. Further, Keen suffered no prejudice as a result of Wheels' apparent failure to fully comply with the subpoena. *See Venson*, 749 F.3d at 653. The documents support that the medical issues were handled by Merck. The call log shows that Wheels employees received a phone call from Keen about the status of her request, which was relayed to Merck. (Pl. Ex. 57.) Other documents that Keen points to clearly have no bearing on why Merck denied Keen's medical exception vehicle request. (*See* Pl. Exs. 28 & 29.)

The Court granted Merck summary judgment on Keen's failure to accommodate her disability claim because Keen failed to participate fully in the interactive process with Merck. Because this was a conclusion made by Merck, any additional inquiries that Keen made to Wheels concerning her medical exception vehicle request do not have bearing on Merck's decision making. In other words, the evidence here shows that the call logs and other Wheels' emails would not impact the Court's analysis of Keen's failure to accommodate claim. *Compare Kiburz v. Sec'y, U.S. Dep't of Navy*, 446 F. App'x 434, 437 (3d Cir. 2011) (denying Rule 60(b)(3) motion where improperly withheld documents during discovery did not have any bearing on plaintiff's disability discrimination

10

claim), *with Colyer v. City of Chicago*, No. 12 C 04855, 2016 WL 25710, at \*23 (N.D. Ill. Jan. 4, 2016) (Chang, J.) (granting Rule 60(b)(3) motion where defendants withheld discovery that plaintiff requested during discovery, pretrial, and trial and that was fundamental to the case). Therefore, Keen was able to fully and fairly present her case. *See Wickens*, 620 F.3d at 759; *Willis*, 687 F.3d at 835. No grounds exist to vacate the summary judgment in favor of Merck, and Keen's motion to vacate is denied.

### III.     Attorney's Fees

Keen, Merck, and Wheels each request attorney's fees in conjunction with these motions and the evidentiary hearing. Wheels filed a separate motion, and Keen and Merck requested such awards within their pre-hearing briefs. Because the Court does not hold Merck, Wheels, or Wells in civil contempt and does not vacate the summary judgment ruling, the Court finds that attorney's fees are not warranted for Keen. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Keen's lack of follow-up regarding her subpoena to Wheels further supports denying such an award. However, because the Court finds that Wheels is far from blameless, the Court also does not find good cause for awarding Wheels attorney's fees pursuant to Local Rule 37.1(d). Similarly, although the hearing testimony demonstrated Merck's distance from the subpoena issues, Keen's decision to bring its civil contempt motion against Merck, too, was not a clear abuse of the judicial process. The Court finds that attorney's fees for Merck also are not appropriate. *See id.*

### Conclusion

Based on the foregoing discussion, this Court denies Keen's Motion to Vacate Summary Judgment in Favor of Defendant [187] and Motion for Rule to Show Cause [189]. The Court dismisses Respondents' Motion to Compel Plaintiff to Produce Proof of Service of the Subpoena

[197] as moot. Respondents' Motion for Attorneys' Fees [233] and Keen's and Merck's requests for attorney's fees are all denied.


IT IS SO ORDERED.

Date: 4/15/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge